**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No.<br>08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>- against -<br><br>1ST ADVANTAGE MORTGAGE, L.L.C. *et al.*,<br><br>Defendants. | Adversary Proceeding<br>No. 16-01019 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>- against -<br><br>WALL STREET MORTGAGE BANKERS, LTD.,<br><br>Defendant. | Adversary Proceeding<br>No. 18-01746 (SCC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO**
<u>**GENERAL ORDER #M-452 AND THIS COURT'S ADR ORDERS**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ...........................................................................................................................3

    A.    The Coordinated Litigation and Wall Street's Limited Participation ................................3

    B.    LBHI's Settlement Efforts and ADR Campaign ...............................................................4

    C.    Wall Street Repeatedly Delays Mediation and Mediation Briefing ..................................5

    D.    Wall Street Attends Mediation Entirely Unprepared ........................................................6

    E.    Wall Street Agrees to LBHI's Last-Ditch Effort to Move Settlement Discussions Forward, Then Fails to Comply .........................................................................................7

ARGUMENT .................................................................................................................................9

CONCLUSION ............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Case**                                                                                                          **Page(s)**

*In re A.T. Reynolds & Sons, Inc.*,
   452 B.R. 374 (S.D.N.Y. 2011) ........................................................................................... 10

*In re Hurricane Sandy*,
   2014 U.S. Dist. LEXIS 168814 (E.D.N.Y. Dec. 2, 2014) ..................................................... 11

*Mickle v. Morin*,
   297 F.3d 114 (2d Cir. 2002) ............................................................................................... 10

*Richard v. Spradlin*,
   2013 U.S. Dist. LEXIS 52905 (Bankr. E.D. Ky. 2013),
   *aff'd* 572 Fed. Appx. 420 (6th Cir. 2014) .................................................................... 10, 11

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995) ................................................................................................. 10

**Other Authorities**

Fed. R. Civ. Proc. 16(f) ............................................................................................................ 10

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), respectfully submits this Memorandum of Law in Support of Its Motion for Sanctions Pursuant to General Order #M-452, the ADR Orders, and the Court's inherent powers against Defendant Wall Street Mortgage Bankers, Inc. ("Wall Street").[1]

## PRELIMINARY STATEMENT

This Court ordered alternative dispute resolution ("ADR") procedures that have been a stunning success. To date, LBHI has successfully resolved over 90% of the active, coordinated cases pending before the Court, representing over 95% of the damages sought. The Court's ADR Orders have effectively driven that result. In fact, the Plan Administrator and over 40 defendants used the ADR procedures to resolve claims through settlement at or shortly following mediation without expending the time and resources of the Court. Although not every mediation resulted in settlement, even those that did not immediately produce settlement often provided an opportunity for the parties to engage in open and frank discussions in good faith. Further, even the scheduling of mediations has been a compelling catalyst for LBHI and its counterparties to meaningfully discuss settlement. In short, although not every mediation has resulted in settlement, the fact that nearly all of LBHI's counterparties participated in good faith tremendously benefited all parties, including LBHI's creditors, the participating defendants, and the Court. Wall Street is an exception.

---

[1] The Court's Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, dated July 18, 2014, was amended on November 14, 2018 [Dkt. No. 59085] (the "RMBS ADR Order"), January 14, 2019 [Dkt. No. 59387], and July 15, 2020 [Dkt. No. 60739], (as so amended, the "ADR Orders").

Wall Street first sought delay in scheduling mediation and when it finally attended mediation it became clear from the opening session it had failed to engage in even the most basic preparation. As a result, the mediation failed, but Wall Street promised to engage in good faith negotiations following the failed mediation. Unfortunately, it has failed to do that, necessitating this motion based on Wall Street's refusal to participate in the mediation process in good faith, violating Paragraph 12 of the RMBS ADR Order. Wall Street's bad faith has cost the Plan Administrator significant attorneys' fees—ultimately to the harm of LBHI's creditors. Wall Street's bad faith has also caused LBHI to incur fees and costs for the mediator—a complete waste because Wall Street was not prepared for the mediation.

LBHI has not brought this motion because Wall Street would not settle. Not every mediation has resulted in settlement (although most have). LBHI has not brought this motion because Wall Street refused to make a reasonable or material settlement offer. Many counterparties have engaged in hard negotiating tactics (although nearly all have ultimately found common ground with LBHI regarding a reasonable settlement level). LBHI has not brought this motion because Wall Street has taken aggressive litigation positions (indeed, Wall Street has been less active in the coordinated proceedings than nearly all other counterparties). Rather, this motion is about Wall Street's failure to prepare for and participate in the mediation in any meaningful way, spurning this Court's ADR Orders and wasting Estate resources. LBHI respectfully requests that the Court enter an award sanctioning Wall Street, and awarding LBHI these costs and fees, totaling at least $72,324.75.

**BACKGROUND**

On October 27, 2018, LBHI filed an adversary complaint (the "Complaint") against Wall Street, seeking indemnification for liability it incurred to the trustees of hundreds of mortgage securitizations (the "RMBS Trustees"). Declaration of Brant D. Kuehn in Support of Plaintiff's Motion for Sanctions ("Decl.") ¶3. The Complaint was one of over 100 similar complaints filed around the same time and which were coordinated before the Court along with over 80 adversary complaints filed by LBHI earlier seeking indemnification for liability LBHI incurred to Fannie Mae and Freddie Mac (the "GSEs"). *Id.* ¶4. The Complaint identified 79 loans with aggregate losses of $20,674,124.79. *Id.* The Complaint did not seek that amount in damages, however, but sought the portion of LBHI's liability to the RMBS Trustees attributable to those loans, and Wall Street's allocable share of LBHI's costs and expenses in defending those claims, recoverable interest, and the costs and fees incurred by LBHI in enforcing Wall Street's contractual indemnification obligations, as provided for in the governing agreements. *Id.* at ¶5.

**A.    The Coordinated Litigation and Wall Street's Limited Participation**

The Wall Street litigation has proceeded since then, along with the other coordinated proceedings—many of which settled as early as 2019. Since filing the Complaint (and the other RMBS complaints), LBHI and the defendants negotiated a case management order and various amendments, produced millions of pages of documents, including documents related solely to Wall Street, and developed and publicly disclosed a method for allocating LBHI's liability among the defendants, including Wall Street. *Id.* at ¶6. Wall Street produced no documents to LBHI and took a limited role in discussions and negotiations with the broader group of defendants. *Id.* at ¶7. Wall Street did not answer or otherwise responded to the complaint until October 13, 2021, after LBHI notified Wall Street of its failure. *Id.* LBHI has patiently focused on amicable resolution of

3

the dispute, giving Wall Street latitude, to save costs and hoping good-faith settlement efforts could resolve the matter. Those efforts have been spurned.

### B. LBHI's Settlement Efforts and ADR Campaign

LBHI tried to settle the RMBS cases almost immediately after it filed the adversary complaints. LBHI made direct party-to-party outreach efforts, as well as outreach through counsel. Many defendants engaged in discussions, and the first of the 103 cases was settled on December 14, 2018, only two months after the litigation was commenced. *Id*. at ¶8. Many other discussions took longer to bear fruit, but by August 28, 2019, LBHI had resolved 28 matters voluntarily, sparing those defendants and LBHI's creditors the costs of litigation, and sparing the Court any time it would have dedicated to those litigations. *Id*. at ¶9.

On August 28, 2019, LBHI held its first mediation under the ADR Orders related to the RMBS claims. Later that fall, LBHI used the ADR Orders to mediate the remaining litigations, holding its next mediation, in-person, on November 19, 2019. *Id*. at ¶10. By the time the global pandemic struck, LBHI had participated in four such mediations in person in Los Angeles, Chicago, and New York. *Id*. at ¶11. When the COVID pandemic intervened, LBHI began to mediate virtually, working with its counterparties flexibly to accommodate the ongoing crisis. As of today, LBHI mediated with 41 defendants, the majority via video conference, with one additional mediation schedule for November 11, 2021. *Id.* at ¶12. Most of those mediations have resulted in settlements, either at the mediation itself or following mediation. *Id.* The Wall Street mediation is one of only five that have not resulted in settlement. *Id.* Even those mediations that did not result in settlement generally produced good faith discussions with prepared counterparties, with the exception of a few cases involving defendants such as Wall Street. *Id.*

4

### C.    Wall Street Repeatedly Delays Mediation and Mediation Briefing

Settlement discussions between LBHI and Wall Street began no later than July 2019, when counsel discussed mediation, and continued discussions in September 2019. *Id.* at ¶13. Discussions did not proceed further until 2020, when the parties first discussed specific potential mediation dates. *Id.* Initially, the parties agreed to mediate on May 13, 2021. *Id.*

During these discussions, counsel for Wall Street asked counsel for LBHI to send him the loan file documents LBHI had originally produced to Wall Street two years before, in the spring of 2019. *Id.* at ¶15. LBHI had produced the loan files in April 2019 in a typical format used in litigation—single page TIFF images, text, and load files. *Id.*

On April 27, 2021, counsel for LBHI noted to counsel for Wall Street that the loan files were voluminous and offered to segregate a specific population of files if helpful. *Id.* at ¶16. Counsel for Wall Street asked that LBHI simply re-upload the production. *Id.* The same day, LBHI reproduced the loan files to Wall Street in the same form as in 2019 and also produced the loan files in a "business-friendly" format used internally at LBHI. *Id.* That "business-friendly" format included the same documents included in the original April 2019 production, but organized as a single PDF for each loan, as well as a separate subfolder named "Claim_Files" that included only documents most relevant to its claims. *Id.* Never did Wall Street or Mr. Levin-Epstein ask for a different format or population of documents. *Id.*

Counsel for the parties also discussed the process for mediation, including mediation submissions. The mediator, Mr. Marc Hirschfield, joined certain of those discussions. *Id.* at ¶14. On April 22, 2021, counsel for Wall Street suggested mediation submissions, five pages or less, focusing on business issues. *Id.* at 13. On May 6, 2021, counsel for Wall Street confirmed that they would agree to a five-page limit and suggested that LBHI focus on damages and LBHI's allocation methodology. *Id.* at 17. Counsel specifically stated that LBHI should not focus on loans and loan-

5

level breach claims. *Id.* Pursuant to the parties' agreement to simultaneously exchange submissions, LBHI submitted its statement to the mediator and Wall Street at the close of business on May 10, 2021. *Id.* at ¶¶17, 18. Wall Street did not submit a mediation statement, explaining that for reasons out of their control, they needed more time to complete the statement, and that Wall Street needed to reschedule the mediation.[2] *Id.* at ¶18. Eventually, the parties agreed to reschedule the mediation for June 23, 2021. *Id.*

Notwithstanding the request only a week before that LBHI not address loan-level breach claims, on May 12, 2021, counsel for Wall Street informed counsel for LBHI that Wall Street now understood the allocation methodology and was at that point more focused on "granular" loan-level issues. Thus, after preparing the initial mediation submission, LBHI spent additional resources on that subject. *Id.* at ¶19. On May 17, 2021, LBHI yet again re-produced the loan files to Wall Street. This time, LBHI also separately produced to Wall Street a collection of loan files relating to only the 13 loans at issue pursuant to LBHI's allocation methodology. Again, Wall Street or Mr. Levin-Epstein did not ask for a different format or population of documents. *Id.* at ¶20.

### D. Wall Street Attends Mediation Entirely Unprepared

On June 23, 2021, the parties and mediator, Marc Hirschfield, met virtually for mediation. At the mediation, Wall Street stated that it had not reviewed the loan files before the mediation. *Id.* at ¶21. By this point, LBHI had long since clarified that it was focused on the 13 loans in its allocation letter, sent more than a year earlier, on May 11, 2020. *Id.* At the mediation, Wall Street

---

[2] Counsel provided a more specific explanation for the inability to make the submission on May 10, 2021. Out of a respect for personal privacy, LBHI does not address it here. LBHI has no reason to doubt the veracity or sincerity of Wall Street's counsel with respect to this delay and takes no issue with Wall Street's failure to submit its statement on May 10, 2021.

6

again asked LBHI to produce the loan files, which it first produced to Wall Street in spring of 2019 in the original format, again on April 27, 2021, and yet again on May 17, 2021, in both the original production format, and the more "business-friendly" format used internally by LBHI. *Id*. Despite this stunning lack of preparation, LBHI agreed to provide the loan files to Wall Street yet again in the "business-friendly" format requested by Wall Street, and to keep LBHI's last-best-and-final offer open for five additional weeks until the end of July so Wall Street could review the loan files and determine whether to accept LBHI's offer. *Id*. at ¶22. At the end of that period, Wall Street asked for yet another extension, and LBHI agreed to keep the offer open yet another week, until Friday, August 6, 2021. *Id*. at ¶22. On Wednesday, August 4, 2021, counsel for LBHI reiterated to counsel for Wall Street what he had communicated by telephone: Wall Street's behavior in the mediation process did not show good faith, that LBHI's offer would expire on Friday, August 6, and that if resolution was not possible, LBHI would proceed with litigation and would pursue its rights under the ADR Orders, including the right to seek sanctions. *Id*. at ¶23.

> **E.      Wall Street Agrees to LBHI's Last-Ditch Effort to Move Settlement Discussions Forward, Then Fails to Comply**

After this period expired, counsel for Wall Street joined LBHI's general counsel and LBHI's outside counsel on a call to discuss settlement on Wednesday, August 11, 2021. *Id*. at ¶24. LBHI again reiterated its frustration and its view that Wall Street had not participated in the mediation in good faith, as required by the ADR Orders. *Id*.

During the call, counsel for Wall Street agreed to explain its defenses, both as to liability and to damages, on all or an agreed-upon subset of the 13 loans at issue and would make settlement offers at the loan level. *Id*. at ¶25. LBHI believed that this structured and "granular" process would help organize what had been an extremely disorganized set of responses from Wall Street. *Id*. LBHI and its counsel believed this proposal could make progress by facilitating a rational analysis

7

of potential loan-level liability that would easily justify LBHI's conservative final settlement demand and by addressing risk of liability and quantifying Wall Street's challenges to damages in a granular but concrete way. LBHI explained this rationale on the call with counsel for Wall Street, who agreed to do so within a week. *Id*.

On August 18, 2021, Wall Street provided purported loan level responses. *Id*. at ¶26. The response was deficient:

- First, Wall Street's response left out two of the loans LBHI had identified as ones Wall Street should address if it had defenses.

- Second, Wall Street's response challenged damages on only two loans, and even there it did not quantify the effect of the challenge.

- Third, Wall Street made no loan-level settlement offer or provide any loan-level risk analysis. This commitment was the core of the process.

*Id*. at ¶¶26-28.

Counsel for LBHI converted the Microsoft Word document provided by Wall Street into a spreadsheet to organize discussion and flagged many of these issues for Wall Street. *Id*. at ¶29. On August 26, LBHI received a further revised spreadsheet containing the same flaws. After further discussions, on Tuesday, August 31, 2021, counsel for the parties had yet another discussion. *Id*. Counsel for LBHI explained yet again the flaws in Wall Street's response, pointing out, nearly three weeks after the August 11 call, that Wall Street had failed to make even a single loan-level settlement offer. *Id*. Counsel for LBHI noted that although he would be happy to present any settlement offer to LBHI, that LBHI would move forward with the litigation and would seek sanctions in connection with the mediation process. *Id*. To date, LBHI has received no further substantive engagement regarding mediation or settlement. *Id*. at ¶30.

8

**ARGUMENT**

The November 14, 2018 Amended Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers (the "RMBS ADR Order") governs the mediation between LBHI and Wall Street. The Court entered those procedures "to promote consensual recovery with respect to the Indemnification Claims, and to encourage effective communication, consultation, negotiation, and when necessary, mediation procedures between the affected parties. RMBS ADR Order at 2. The RMBS ADR Order incorporates General Order #M-452, adopted June 28, 2013 (the "Standing Order"), "providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York." *Id.* at ¶2. The Standing Order reflects the importance of good faith participation by the parties providing that "[t]he mediator shall report any willful failure to attend or participate in good faith in the mediation process or conference. Such failure may result in the imposition of sanctions by the Court." *Id.* at ¶3.2.

Similarly, the RMBS ADR Order itself reflects the same concerns. It provides that although "[n]o party is required to settle or compromise any dispute or enter into a particular settlement or compromise," that "LBHI and the Seller [Wall Street] must also engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow the directions of the mediator, and otherwise comply" with the procedures in the RMBS ADR Order. ADR Order at ¶6(b). The RMBS ADR Order further provides for sanctions in the event of failure to participate in good faith:

> 12. Sanctions for Parties. LBHI and each Seller [Wall Street] must participate in good faith with these indemnification ADR Procedures with regard to the ADR Disputes specified in the applicable Indemnification ADR Notice. If, after notice and a hearing, the Court determines that LBHI or the Seller [Wall Street]

9

> have not complied with the Indemnification ADR Procedures in good faith in connection with any Indemnification ADR Dispute, LBHI or the Seller [Wall Street] may be subject to such sanctions as the Court deems appropriate….

*Id*. at ¶12. The RMBS ADR Order further provides that:

> Sanctions *shall include*, but are not limited to: . . . b. Against Sellers: (i) attorneys' fees; (ii) fees and costs of the mediator; (iii) immediate initiation of the mediation stage, provided the matter has not yet reached that point; and/or (iv) termination of the mediation with the right for LBHI to elect to commence an action against a defaulting Seller.

*Id*. at ¶12(b) (emphasis added). The power to impose sanctions on those who fail to participate in good faith during court-ordered mediation also comes from the bankruptcy court's "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders." *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002); *see also Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir. 1995) (same). Further, Fed. R. Civ. Proc. 16(f), made applicable to these adversary proceedings by Fed. R. Bankr. P. 7016, allows the court to order sanctions "if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order."

Neither the Standing Order nor the ADR Orders define good faith—or bad faith. Case law, has, however, explained a party is not required to make a settlement offer during mediation to meet its good faith obligations, and a court may not "invoke 'pressure tactics' designed to coerce a settlement. *In re A.T. Reynolds & Sons, Inc*., 452 B.R. 374, 382 (S.D.N.Y. 2011) (holding that parties cannot be forced to make a settlement offer and cannot be coerced into a settlement by the court). However, "good faith" generally requires that parties attend conferences, provide any requested memoranda, and produce representatives with settlement authority. *Id*. at 381, 384. Failure to adequately prepare for a mediation can also be considered "bad faith." *Richard v.*

10

*Spradlin*, 2013 U.S. Dist. LEXIS 52905, *16 (Bankr. E.D. Ky. 2013) (finding bad faith and granting sanctions for failing to prepare, evidenced by undisputed facts that (1) the night before the mediation, the defendants' attorney told mediator that the defendants needed to meet before the mediation and would be late; and (2) defendants' client representative insisted on spending several hours with his attorneys before joining the mediation), *aff'd* 572 Fed. Appx. 420 (6th Cir. 2014).

Here, the crux of LBHI's motion is this lack of participation. Wall Street was free to attend mediation and refuse to make an offer of settlement. Wall Street was free to object to the legitimacy of the claims and conclude that litigation was its chosen course of action. But its failure to prepare for mediation even after receiving the requested materials months—even years—before mediation while repeatedly pushing back submission and mediation dates is the exact inappropriate behavior that warrants an award of sanctions.

The efforts of the courts in the *In re Hurricane Sandy* cases are instructive. 2014 U.S. Dist. LEXIS 168814 (E.D.N.Y. Dec. 2, 2014). There, like here, the court attempted to provide an ADR framework for parties litigating numerous coordinated claims related to superstorm Sandy. *Id.* (entering new case management order to address abuse of mediation process, including bad faith mediation practices). A Committee of Magistrate Judges (the "Committee") was appointed to oversee management of the cases, including through the use of a mediation panel and a direction to "counsel to participate in good faith in mediation and settlement discussions." *Id*. at *5. In addressing the abuses that it described as "failure to participate in good faith during mediation," the Committee first pointed to instances in which "defense counsel have, while appearing at mediation sessions, refused to participate in settlement talks, claiming that they have not received necessary documents or other information from plaintiffs." *Id*. at *5-6. As the Committee pointed out, these defendants could have "conferred with counsel for plaintiffs or contacted the Court prior

11

to the scheduled mediation to indicate what they still needed [and] steps could have been taken to avoid wasting the time of counsel and the mediators. Such conduct can only be viewed as dilatory."

*Id*. at *6. In addressing this issue, the Committee entered an order stating that:

> The Court and the Committee expect the parties to proceed to these mediations in good faith and having fully prepared to present their arguments and evidence at the mediation. It is the responsibility of both sides to fully prepare for mediation before the scheduled mediation session. That includes notifying your adversary counsel, the Committee member monitoring your case, or the mediator if you are missing something.

*Id*. at *19.

Here, Wall Street's behavior is far worse. Wall Street received the loan files in spring of 2019, then received them again in both production format and the "business-friendly" format on April 27, 2021, and then received them yet again in the business-friendly format on May 17, 2021. At the mediation, Wall Street did not explain its failure to prepare by pointing to missing documents (whether those it requested or did not request), but merely asked for LBHI to provide the documents yet again. Wall Street agreed to mediation no later than May 15, 2020, and it had more than a year to prepare for the June 23, 2021, mediation. The only explanation is that Wall Street intended to delay and waste LBHI's resources, which is consistent with its history of rescheduled mediations, submission exchanges, and lack of progress even to the modest procedures the parties discussed and to which Wall Street explicitly agreed. At this point, the entire process has been nothing more than an intentional effort to waste LBHI's (and its creditors') resources.

The terms of the RMBS ADR Order are clear, and an award of attorneys' and the mediator's fees for such bad faith is not discretionary: sanctions "<u>shall</u> include but are not limited to … (i) attorneys' fees; [and] (ii) fees and costs of the mediator." RMBS ADR Order at ¶12(b) (emphasis added). Here, such an award should include not only the fees and costs associated with

12

the day of mediation itself, but the fees and costs associated with preparing for and scheduling the mediation, including correspondence related to scheduling and logistics, and the costs LBHI incurred in preparing its mediation submission, as well as post-mediation efforts to salvage the process and the costs of moving for sanctions.

LBHI does not take this application lightly and has avoided seeking such relief—even for mediations during which counterparties took hard negotiating positions or made arguments that LBHI believed were wrong. Overall, the ADR Orders have been an overwhelming success. But without good faith participation, the process cannot result in judicial efficiency and voluntary settlement. Wall Street's conduct has resulted in the opposite. The dilatory behavior and lack of preparation has wasted time and money and has frustrated the purpose of mediation—the efficient, voluntary, resolution of the underlying dispute. In order to continue the extraordinary progress in resolving these cases voluntarily, LBHI respectfully requests that the Court enforce the explicit terms of the ADR Orders.

## CONCLUSION

LBHI respectfully requests that the Court enter an Order directing requiring Wall Street to pay LBHI's costs and expenses, including attorneys' fees, incurred in connection with the mediation, LBHI's share of the mediator's fees, LBHI's preparation for and follow-up after mediation, and fees incurred in connection with bringing this Motion, altogether totaling no less than $72,324.75 as of November 3, 2021. Decl. ¶31.

13

Date:   November 10, 2021

**WOLLMUTH MAHER & DEUTSCH LLP**

By: */s/ Brant D. Kuehn*
    William A. Maher
    Adam M. Bialek
    Brant D. Kuehn
    Christopher J. Lucht

    500 Fifth Avenue
    New York, New York 10110
    Telephone: (212) 382-3300

*Counsel for Lehman Brothers Holdings Inc.*

14